IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARIDAD HEREDIA and SHERISE RICHARDSON, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>v.<br><br>ACH FOOD COMPANIES, INC.,<br><br>                      Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

      Plaintiffs Caridad Heredia and Sherise Richardson ("Plaintiffs"), by and through their attorneys, make the following allegations against Defendant ACH Food Companies, Inc. ("Defendant") pursuant to the investigations of their counsel and upon information and belief, except as to the allegations specifically pertaining to themselves or their counsel, which are based upon personal knowledge.

## INTRODUCTION

      1.     This is a class action on behalf of purchasers of Mazola Canola Oil ("Mazola" or the "Product") in the United States.

      2.     Defendant's product packaging prominently states that Mazola is "100% Pure":





3. Contrary to Defendant's representation, however, testing has shown that Mazola contains hexane.[1] Independent laboratory testing has detected .79 micrograms of hexane per gram of the Product.

4. The presence of hexane is a tell-tale sign that Mazola was produced by extracting canola oil from rapeseed using chemical solvents.

5. This is not the only method to produce canola oil. Canola oil can also be produced by using a machine known as an "expeller press" to physically squeeze canola oil out of rapeseed. Such a product does not contain hexane or any other solvents and would appropriately be labeled as "100% Pure."

6. Reasonable consumers understand "100% Pure" to indicate the Product does not contain hexane.

7. Canola oil produced via an expeller press comes at a premium price, because the expeller production process is more time consuming and expensive. It also produces a lower oil yield than solvent extraction.

8. Customers will pay a price premium for canola oil that is produced via an expeller press because it contains fewer impurities and no hexane residue, unlike canola oil that has been extracted with solvents. Additionally, expeller pressed canola oil is produced at a lower temperature.

9. Consumers believe that canola oils with fewer impurities are more "heart healthy."[2]

10. Defendant is well-aware that consumers value its "100% Pure" representation, and intentionally placed the representation on the front of the Product packaging despite knowledge of its falsity. Such a false statement of fact cannot occur by happenstance. Moreover, the problem of hexane content in solvent-extracted canola oil has been well-publicized by major industry-wide

---

[1] Hexane is an organic compound with the molecular formula C6H14. Hexane is a significant constituent of gasoline.

[2] https://dailydelish.us/faq/what-is-the-difference-between-canola-oil-and-expeller-pressed-canola-oil/ (last accessed April 12, 2022); https://moviecultists.com/is-expeller-pressed-canola-oil-healthy (last accessed April 12, 2022).

studies, of which Defendant was undoubtedly aware.[3]  Defendant nonetheless intentionally manufactures and sells Mazola that it knows contains hexane, while falsely representing on packaging that the Product is 100% pure and contains no hexane.

11.     This is a proposed class action brought by Plaintiffs, on behalf of a class of similarly situated individuals, against Defendant for breach of express warranty, and violations of New York consumer protection laws.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendant.  Defendant purposefully avails itself of the New York consumer market and distributes Mazola to at least hundreds of locations within this County and thousands of locations throughout New York, where the Products are purchased by countless consumers every day.  These purposeful contacts with New York give rise to the present cause of action.

13.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed class, any member of the class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

14.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information and omissions regarding Mazola, occurred within this District.

## PARTIES

15.     Plaintiff Caridad Heredia is an individual consumer who, at all times material hereto, was a citizen of New York.  Ms. Heredia purchased Mazola from a retail store located in

---

[3] *See* https://www.ec.gc.ca/ese-ees/default.asp?lang=En&n=BCBE839D-1#sec15; https://analyticalsciencejournals.onlinelibrary.wiley.com/doi/10.1002/jssc.200700303

Yonkers, New York in or about November 2021 for approximately $15. In purchasing the Product, Ms. Heredia relied on Defendant's false, misleading, and deceptive marketing of the Mazola as being "100% Pure." Ms. Heredia understood that "100% Pure" meant that the Product did not contain any hexane, but in fact the Mazola she purchased did contain hexane. Had Ms. Heredia known that the "100% Pure" representation was false and misleading, she would not have purchased the Mazola or would have only been willing to purchase the product at a lesser price.

16. Plaintiff Sherise Richardson is an individual consumer who, at all times material hereto, was a citizen of New York. Ms. Richardson purchased Mazola from a retail store located in Middletown, New York in or about November 2021 for approximately $15. In purchasing the Product, Ms. Richardson relied on Defendant's false, misleading, and deceptive marketing of the Mazola as being "100% Pure." Ms. Richardson understood that "100% Pure" meant that the Product did not contain any hexane, but in fact the Mazola she purchased did contain hexane. Had Ms. Richardson known that the "100% Pure" representation was false and misleading, she would not have purchased the Mazola or would have only been willing to purchase the product at a lesser price.

17. Defendant ACH Food Companies, Inc. is incorporated in the State of Delaware, with its principal place of business in Oakbrook Terrace, Illinois.

18. Defendant manufactures, markets, and distributes the Product throughout New York and the United States.

## CLASS ALLEGATIONS

19. Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Product (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

20. Plaintiffs also seek to represent a Subclass of all Class Members who purchased the Product in New York (the "New York Subclass").

21. At this time, Plaintiffs do not know the exact number of members of the Class and Subclass; however, given the nature of the claims and the number of retail stores in the United

5

States selling the Product, Plaintiffs believe that Class and Subclass members number in the millions and are so numerous that joinder of all members is impracticable.

22. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    a. whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

    b. whether Defendant's conduct was unfair and/or deceptive;

    c. whether Defendant breached warranties to Plaintiffs and the Class;

    d. whether Plaintiffs and the Class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

23. Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, Defendant's Product and Plaintiffs sustained damages from Defendant's wrongful conduct.

24. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Class or the Subclass.

25. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

26. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making appropriate equitable relief with respect to the Class and the Subclass as a whole.

27. The prosecution of separate actions by members of the Class and the N.Y. Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive

of the interests of the Class and the N.Y. Subclass even where certain Class members are not parties to such actions.

## COUNT I
### Violation of the New York General Business Law § 349
### (On behalf of the New York Subclass)

28. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

29. Plaintiffs bring this cause of action on behalf of themselves and members of the New York Subclass against Defendant.

30. Plaintiffs and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

31. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

32. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

33. Defendant made false and misleading statements by marketing the Product as "100% Pure" when in fact it contained hexane.

34. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

35. Defendant deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiffs, about the quality of its Products, as discussed throughout.

36. Plaintiffs and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

37. Defendant's actions set forth above occurred in the conduct of trade or commerce.

38. The foregoing deceptive acts and practices were directed at consumers.

39. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

Defendant's conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Mazola.

40. Plaintiffs and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the Mazola had they known the truth, and (b) they overpaid for the Mazola on account of the misrepresentations and omissions, as described herein.

41. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to enjoin Defendant's unlawful acts and practices described herein, to recover their actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II
### Violation of the New York General Business Law § 350
### (On behalf of the New York Subclass)

42. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

43. Plaintiffs bring this claim individually and on behalf of the members of the New York Subclass against Defendant.

44. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

45. Defendant's labeling and advertisement of the Mazola was false and misleading in a material way. Specifically, Defendant advertised the Product as "100% Pure" when in fact it contains hexane.

46. Plaintiffs understood Defendant's misrepresentations to mean that the Mazola was in fact "100% Pure" as reasonable consumers understand the term.

47. This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

48. This misrepresentation has resulted in consumer injury or harm to the public interest.

49. As a result of this misrepresentation, Plaintiffs and New York Subclass members have suffered economic injury because (a) they would not have purchased the Product had they known the truth, and (b) they overpaid for the Products on account of the misrepresentations and omissions, as described herein.

50. By reason of the foregoing and as a result of Defendant's conduct, Plaintiffs and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## COUNT III
### (Breach Of Express Warranty)

51. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

52. Plaintiffs bring this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

53. In connection with the sale of the Mazola, Defendant issued written warranties. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller expressly warranted that the Mazola was "100% Pure."

54. Defendant's express warranties and its affirmations of fact and promises made to Plaintiffs and the Class regarding the Mazola became part of the basis of the bargain between Defendant and Plaintiffs and the Class, thereby creating an express warranty that the Mazola would conform to those affirmations of fact, representations, promises, and descriptions.

55. The Mazola does not conform to the express warranties because they contain hexane and is made using the solvent extraction method.

56. Plaintiffs and members of the Class were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Mazola if they had known the truth about Mazola's hexane content; (b) they paid a price premium for the Mazola based on

Defendant's express warranties; and (c) the Mazola did not have the characteristics, uses, or benefits as promised.

57. As a result, Plaintiffs and members of the Class have been damaged either in the full amount of the purchase price of the Mazola or in the difference in value between the Mazola as warranted and the Mazola as sold.

58. On March 16, 2022, Plaintiffs sent a notice letter to Defendant consistent with NY UCC § 2-607(3)(a) and U.C.C. 2-607(3)(A). The letter was sent on behalf of Plaintiffs and all other persons similarly situated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and members of the Class and New York Subclass as follows:

a. For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclass on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For injunctive relief enjoining the illegals acts detailed herein;

f. For prejudgment interest on all amounts awarded;

g. For an order of restitution and all other forms of equitable monetary relief;

h. For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: June 24, 2022  **BURSOR & FISHER, P.A.**

By:    */s/ Yitzchak Kopel*
        Yitzchak Kopel

Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: ykopel@bursor.com

**EATON & TORRENZANO, L.L.P.**
Craig A. Eaton
1662 Sheepshead Bay Road
Brooklyn, New York 11235
Telephone (718) 332-7766
Facsimile (718) 332-5898

*Counsel for Plaintiff*